UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL SOTO and
DAISY LARSON-SOTO, his wife,

    Plaintiffs,

v.

FLIXBUS, INC., Foreign Corporation, and
UMBRELLA BUSES INC, Florida Profit
Corporation

    Defendants.

CASE NO.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1) Plaintiff MICHAEL SOTO ("SOTO") and his wife, Plaintiff DAISY LARSON-SOTO ("LARSON-SOTO"), by and through the undersigned counsel, hereby bring this civil rights action, personal injury claim, and loss of consortium claim against Defendants FLIXBUS, INC. ("FLIXBUS"), a foreign profit corporation and UMBRELLA BUSES INC ("UMBRELLA"), Florida Profit Corporation. This action is brought for violations of federal and state disability civil rights laws for failing to comply with federal non-discrimination statutes. These statutes include the Americans with Disabilities Act (ADA) of 1990, codified at 42 USC §§ 12101 *et seq*.; 42 USC §§ 12181 & 12182; 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, specifically 49 CFR § 37.165(c)(3).

2) SOTO further alleges violations of numerous provisions within Florida's civil rights statutes and other legislative measures designed to protect against discrimination towards persons with disabilities.

3) The action also addresses a physical injury sustained by SOTO as a direct result of these alleged violations.

4) The action also addresses a loss of consortium sustained by SOTO-LARSON as a direct result of these alleged violations.

5) The matters in controversy exceed the sum or value of $75,000.00, exclusive of interest and costs.

## JURISDICTION

6) This Court holds original jurisdiction over this action under the provisions of 28 USC §§ 1331, for federal question jurisdiction; 1332, for diversity of citizenship jurisdiction; and 1343, for civil rights. Additionally, 29 USC § 794 grants jurisdiction for claims related to non-discrimination under federal grants and programs. Under 28 USC § 1367, this Court has supplemental jurisdiction for all related claims present in this action. And jurisdiction to issue declaratory judgments and further relief is established under 28 USC §§ 2201 and 2202.

## VENUE

7) Venue is proper in this Court under 28 USC § 1391(b) and Local Rule 1.04. This is because (i) FLIXBUS and UMBRELLA BUSES INC conduct business actively within this district, and (ii) a significant portion of the events or omissions leading to the claims made herein took place within this district.

## PARTIES

8) SOTO, a resident of the state of Florida, is recognized as an individual with a disability under definitions provided by all relevant federal and state statutes pertinent to his claims. This includes the Americans with Disabilities Act (ADA) of 1990, codified at 42 USC §§ 12101 *et seq.*, 42 USC §§ 12181 *et seq.*, 42 USC §§ 12182 *et seq,* 42 USC §§ 12184, Title 49 of the Code of Federal Regulations Part 37, 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, the Florida Civil Rights Act of 1992, as detailed in Florida Civil Code §§ 760.01-760.11 and §§ 509.092 *et seq*.

9) SOTO possesses a "qualified disability" and relies on a walker or wheelchair for mobility.

10) LARSON-SOTO is and was SOTO's lawful wife.

11)     FLIXBUS, a foreign profit corporation, licensed and actively engaged in business within the state of Florida, operates as a private entity providing specified transportation services, including bus services within Florida. As such, FLIXBUS is responsible for ensuring that its bus operations adhere to the ADA and all applicable federal and state laws and regulations.

12)     FLIXBUS, doing business in the Middle District of Florida, is the owner of the bus and transportation system that is the subject of this action, to wit: the FlixBus line service between Naples, Fla., and Orlando, Fla. ("the Bus Route").

13)     UMBRELLA BUSES INC, a Florida Corporation, licensed and actively engaged in business within the state of Florida, also operates as a private entity providing specified transportation services, including bus services within Florida and works in conjunction with FLIXBUS to provide bus services.

14)     FLIXBUS in conjunction with UMBRELLA BUSES INC provide specified public transportation within Title III of the Americans with Disabilities Act.

15)     FLIXBUS sells bus tickets to the general public.

16)     FLIXBUS, in conjunction with UMBRELLA BUSES INC, have violated federal and state disability civil rights laws, among other legal mandates. Employees of FLIXBUS in conjunction with UMBRELLA BUSES INC acted as agents under its direction, with responsibilities that include compliance with federal and state legal requirements and ensuring the safety of all passengers. Consequently, FLIXBUS and UMBRELLA are accountable for ensuring adherence to all pertinent laws and is liable for any infractions its employees commit within the scope of their employment.

ALLEGATIONS COMMON TO ALL CLAIMS

17)     This civil rights complaint is filed by a person with a qualified disability who uses either a walker or wheelchair due to mobility disabilities and was denied non-discriminatory, safe access to bus services operated by FLIXBUS in conjunction with UMBRELLA. As a result of FLIXBUS/UMBRELLA's actions and inactions, SOTO sustained a serious bodily injury.

18) FLIXBUS and UMBRELLA are subject to the federal laws governing discrimination based on disability, including the ADA and the relevant implementing regulations.

19) FLIXBUS and UMBRELLA have violated federal and state disability civil rights laws by failing to comply with federal non-discrimination statutes. These include the Americans with Disabilities Act of 1990, Americans with Disabilities Act (ADA) of 1990, codified at 42 USC §§ 12101 *et seq.*, 42 USC §§ 12181 *et seq.*, 42 USC §§ 12182 *et seq,* 42 USC §§ 12184, Title 49 of the Code of Federal Regulations Part 37, 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, the Florida Civil Rights Act of 1992, as detailed in Florida Civil Code §§ 760.01-760.11 and §§ 509.092 *et seq.*, and 29 USC § 794(a), along with various provisions of Florida's civil rights statutes and other laws that protect against discrimination.

20) FLIXBUS and UMBRELLA have discriminated against SOTO and others in similar circumstances in multiple ways. This includes (a) not ensuring that individuals with mobility disabilities who use common wheelchairs have non-discriminatory, safe access to bus services; (b) not ensuring that personnel are adequately trained in the safe operation of vehicles and equipment, as well as in providing respectful and courteous service to passengers with disabilities; and (c) maintaining architectural barriers that do not comply with legal standards.

## FACTUAL ALLEGATIONS

21) According to its marketing and promotional materials, FLIXBUS is a private company primarily engaged in providing intercity bus transportation services. It offers or arranges these services throughout Florida and the United States.

22) FLIXBUS offers bus routes to the general public, including transportation services between Naples and Orlando.

23) Unbeknownst to the consumer, once a bus ticket is purchased, FLIXBUS subcontracts the ride to a local operator.

24) The buses are branded with FLIXBUS logos.

25) FLIXBUS does not notify the consumer that they subcontracting with a third party.

26) In this case, SOTO and LARSON-SOTO had no knowledge that a subcontractor was hired to perform the services they had paid FLIXBUS to provide.

27) The bus was branded with FLIXBUS markings.

28) Unbeknownst to the Plaintiffs, the local operator in this case was UMBRELLA.

29) Given the nature of their relationship and the actions of both Defendants, both Defendants share equal liability for violations of the ADA and the negligent actions of their employees.

30) SOTO is a qualified individual with a disability under the ADA.

31) SOTO planned to travel with his wife from Naples to Orlando using FLIXBUS for transportation.

32) In December 2022, SOTO purchased tickets for the Naples-Orlando bus route from FLIXBUS.

33) To ensure his journey would accommodate his disability, SOTO contacted FLIXBUS before the trip to confirm their ability to meet his specific needs.

34) During the trip to Orlando, the FLIXBUS/UMBRELLA driver was unfamiliar with operating the bus's wheelchair lift and had to call company personnel for assistance. This caused a two-hour delay, leaving passengers stranded while the driver learned how to use the lift system.

35) On December 27, 2022, SOTO and LARSON-SOTO used FLIXBUS for their return trip to Naples. This journey resulted in serious bodily injury to SOTO due to the driver's negligence, lack of ADA compliance training, and disregard for SOTO and LARSON-SOTO's needs.

36) During the December 27, 2022, trip, SOTO relied on a rollator/seated walker as a mobility aid designed for individuals with mobility impairments.

37) SOTO immediately informed the bus driver of his disability and his need to use the wheelchair lift, as he was unable to climb the bus steps due to his mobility impairment.

38) At first, the driver refused to let SOTO use the lift. The driver argued that the lift was exclusively for wheelchairs and claimed SOTO was not disabled and could use the stairs.

39) After approximately 15 minutes of argument and debate, the driver finally relented and allowed SOTO to use the lift.

40) This very public experience was profoundly humiliating and emotionally distressing for SOTO.

41) Eventually, the bus driver activated the lift and instructed SOTO to board without offering assistance or giving a warning before operating the lift.

42) SOTO boarded the lift without assistance from the driver. While seated on his rollator, the driver activated the lift without warning, causing it to rise suddenly and startling SOTO.

43) The lift ascended but became stuck approximately six inches before reaching the platform, leaving a gap of five to six inches below the bus platform.

44) The bus driver made a cursory attempt to fix the issue but did not put forth significant effort to resolve the problem or call for proper assistance.

45) The driver appeared visibly annoyed with SOTO and acted callously and impatiently.

46) Without warning, the bus driver entered the bus, leaned over from the platform, grabbed SOTO's arms, and physically pulled him onto the bus.

47) The driver dragged SOTO onto the bus, ignoring SOTO's screams of pain.

48) This action caused SOTO significant pain and worsened his pre-existing disabilities, including injuries to his legs, arms, shoulders, and back.

49) The bus driver waited an hour for a technician to arrive and lower the platform so the bus could depart. All passengers, including the Plaintiffs, were already on the bus by this time.

50) During the one-hour wait and the two-hour bus ride, the driver failed to check SOTO's condition or provide further assistance.

51) SOTO was in pain and suffering from the injuries he sustained when he was forcibly pulled onto the bus.

52) At a subsequent stop, the driver used the lift without incident to board a passenger in a wheelchair. The driver then seated this passenger, blocking SOTO's walkway.

53) Upon arrival at the Plaintiffs' destination, the driver instructed SOTO to disembark but refused to allow him to use the lift, citing the passenger's presence in the wheelchair.

54) SOTO again argued with the driver, but this time, the driver refused to relent and forced SOTO to "walk" off the bus.

55) The driver acted rudely and impatiently toward SOTO, showing little concern for his condition.

56) SOTO pleaded with the driver for help, explaining that he could not walk well enough to disembark, but the driver ignored his pleas.

57) Due to the location where the driver had seated SOTO, he was blocked in by the passenger in the wheelchair.

58) Forced to disembark without any ADA accommodations, SOTO attempted to navigate around the wheelchair to exit the bus, resulting in a fall and further injuries, including impact to both kneecaps.

59) As a result of the driver's refusal to allow SOTO to use the lift, SOTO was forced to rely on stranger's for assistance exiting the bus.

60) The driver showed no concern for SOTO's injuries and refused to assist, instead relying on strangers to help.

61) A fellow passenger, rather than the bus driver, assisted SOTO in exiting the bus while he was in severe pain and physically weak.

62) Such assistance involved other passengers physically help move/carrying SOTO.

63) In addition to the humiliation and embarrassment this caused SOTO, his reliance on helpful but untrained passengers greatly increased his risk of injury.

64) SOTO, unable to walk due to his injuries, remained seated on his rollator while waiting for paratransit transportation.

65) Due to the driver's negligence in pulling SOTO off the lift and forcing him to walk off the bus without ADA accommodations, SOTO sustained serious and permanent injuries.

66) The following day, SOTO sought medical attention at the hospital, where staff attributed his worsened condition to the injuries sustained during the incident.

67) As a result of the incident, SOTO underwent additional medical procedures, including, but not limited to, a revision surgery for his left knee and the implantation of a spinal cord stimulator for pain management.

68) SOTO's quality of life has significantly declined since the incident, as he now experiences reduced mobility, increased reliance on an electric wheelchair, and ongoing severe physical and emotional pain.

69) SOTO can now not use FLIXBUS or similar transportation services due to fear of discrimination and mistreatment, significantly limiting his ability to travel.

70) LARSON-SOTO, SOTO's wife, has assumed additional caregiving responsibilities due to SOTO's worsened condition, adversely impacting their marital relationship and overall quality of life.

71) SOTO's physical and emotional distress, along with his wife's loss of consortium, were directly caused by FLIXBUS/UMBRELLA's negligence and violations of the Americans with Disabilities Act (ADA).

72) This incident caused SOTO to sustain serious injuries, leaving him in pain, humiliated, and upset.

73) The negligence of FLIXBUS/UMBRELLA, combined with its failure to follow ADA requirements and/or provide a functioning lift, resulted in injuries to SOTO.

74) SOTO has suffered significantly, both physically and emotionally, as a result of these injuries.

75) The effects of this incident extend beyond the immediate pain and disruption, deeply affecting SOTO's emotional well-being.

76) Additionally, there is a genuine concern that SOTO will face similar discrimination in the future, given FLIXBUS/UMBRELLA's apparent failure to follow ADA laws and guidelines on its buses.

77) This pattern of behavior suggests a broader issue of non-compliance with laws designed to prevent discrimination, creating risks not only for SOTO but also for other individuals in similar situations.

78) FLIXBUS/UMBRELLA failed to comply with United States and Florida disability civil rights and access laws, discriminating against individuals with disabilities in its provision of public bus services.

79) FLIXBUS/UMBRELLA failed to provide a reasonable accommodation by refusing to allow SOTO to use the lift and failing to offer him alternative seating on the bus.

80) This ongoing discrimination is evidenced by systemic issues, including the lack of non-discriminatory, safe access to bus services for wheelchair users, insufficient training for personnel on the safe operation of vehicles, and the respectful treatment of passengers with disabilities.

81) These issues stem from FLIXBUS/UMBRELLA's policies, or lack thereof, which demonstrate a disregard for the civil rights of passengers with mobility disabilities.

82) As a result, SOTO has faced denial of non-discriminatory access to bus services, interference with safe bus usage, physical injury and risks thereof, as well as significant inconvenience and emotional distress.

83) These persistent problems are exacerbated by FLIXBUS/UMBRELLA's consistent failure to use lift systems on buses, failure to ensure that their vehicles are properly equipped with

functional wheelchair lifts, and its failure to properly train employees, signaling a broader pattern of non-compliance with non-discrimination laws.

84) Despite SOTO's complaint to FLIXBUS before this lawsuit, the discriminatory treatment has continued.

85) As someone who travels, SOTO anticipates using FLIXBUS/UMBRELLA's services again and fears facing similar discriminatory treatment due to the company's ongoing issues with securement devices and overall non-compliance with applicable laws.

86) This cycle of discrimination and injury underscores FLIXBUS/UMBRELLA's ongoing legal violations and the sustained harm to SOTO's rights and well-being.

### CLAIM I: TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (AS TO SOTO v. FLIXBUS/UMBRELLA)

87) SOTO realleges and reavers paragraphs 1-86, inclusive.

88) FLIXBUS, a private entity offering specified transportation services, primarily transports people and impacts commerce.

89) The bus route offered by FLIXBUS provides transportation services to the general public on a bus line in this jurisdiction.

90) Therefore, FLIXBUS/UMBRELLA falls under the purview of Title III of the Americans with Disabilities Act (ADA), 42 USC §§ 12101 *et seq*.; 42 USC §§ 12181 & 12182; 42 USC §§ 12184; 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, specifically 49 CFR § 37.165(c)(3). Consequently, FLIXBUS is subject to Title III of the Americans with Disabilities Act ("ADA"), 42 USC §§ 12181 *et seq*., and 42 USC § 12184.

91) FLIXBUS/UMBRELLA operates a private fixed-route transportation service affecting commerce as defined by 42 USC § 12184(a) and 49 CFR §§ 37.3 and 37.5(f).

92) It is an operator of an over-the-road bus (OTRB) as per 42 USC § 12181(5) and 49 CFR § 37.3 and qualifies as a small operator under 49 CFR § 37.3.

93) In compliance with Title III of the ADA, a small OTRB fixed-route operator must either ensure that any vehicle purchased or leased after October 29, 2001, is accessible and usable by individuals with disabilities, including those who use wheelchairs, or provide equivalent service to such individuals. This is mandated by 42 USC § 12184(b)(4)(A) and 49 C.F.R. § 37.183(b).

94) An OTRB operator must not exclude persons with disabilities from participating in, or deny them the benefits of, specified public transportation services, as prohibited by Title III of the ADA, 42 USC § 12184, along with applicable implementing regulations found in 28 CFR part 36, and 49 CFR parts 37 and 38.

95) The conduct of FLIXBUS/UMBRELLA, as previously detailed in this Complaint, constitutes a violation of Title III of the ADA and the federal regulations enacted under Title III, as found in 28 CFR part 36 and 49 CFR parts 27, 37, and 38.

96) Title III of the Americans with Disabilities Act (ADA) forbids private entities mainly involved in transporting people from discriminating against individuals with disabilities.

97) This discrimination pertains to denying these individuals the full and equal enjoyment of public transportation services based on their disability.

98) FLIXBUS/UMBRELLA have breached Title III of the ADA by not operating its services in a non-discriminatory manner.

99) Specific failures include not providing individuals with mobility disabilities non-discriminatory and safe access to bus services, failure to ensure that their vehicles are properly equipped with functional wheelchair lifts, not ensuring that personnel are adequately trained for the safe operation of vehicles and equipment, and not offering respectful and courteous service to passengers with disabilities.

100) Defendants have also failed to "maintain in operative condition those features of facilities and vehicles that are required to make the vehicles and facilities readily accessible to and usable by individuals with disabilities," such as wheelchair lifts. 49 C.F.R. §§ 37.161, 37.207(c).

101) Defendants have further failed to "establish a system of regular and frequent maintenance checks of lifts sufficient to determine if they are operative," to "ensure that vehicle operators report [], by the most immediate means available, any failure of a lift to operate in service," and to take any "vehicle [with a non-operative lift] out of service before the beginning of the vehicle's next trip and ensure that the lift is repaired before the vehicle returns to service. 49 C.F.R. § 37.203.

102) In this instance, the lift broke while SOTO was on it, and the driver injured SOTO while trying to remove him from the lift, callously and without proper training

103) Additionally, it constitutes discrimination when an operator relies on individuals other than employees, such as family members or travel companions, to assist passengers with disabilities — unless the passenger requests explicitly or consents to such assistance.

104) In this instance, the bus driver relied on another passenger, a stranger to SOTO, to help SOTO up from the bus floor after a fall caused by FLIXBUS/UMBRELLA's negligence, and other passengers for help exiting the vehicle.

105) This Act, coupled with the bus driver's behavior, clearly indicates a failure on the part of FLIXBUS/UMBRELLA to train staff on accessibility requirements adequately.

106) Defendants have further violated the ADA by failing to ensure that their personnel are trained to "proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities." 49 C.F.R. § 37.173.

107) It is the responsibility of FLIXBUS/UMBRELLA:

   a. To comply with all ADA requirements for accessible service and not exclude persons with disabilities from their transportation services;

   b. To train all employees and contractors on the requirements of the ADA, and in operation of the wheelchair lifts, and use of lifts in a non-discriminatory manner;

      c. To have all securement devices and train employees to use them properly;

      d. To properly maintain all wheelchair lifts (to the extent a company has lift-equipped buses);

      e. To file required annual reports with the Federal Motor Carrier Safety Administration;

      f. And to remove all architectural barriers leading up to and on the bus.

108) SOTO has encountered unlawful barriers that have restricted full and equal access to and enjoyment of the property in question.

109) These barriers have directly resulted in SOTO suffering injuries due to FLIXBUS/UMBRELLA's actions or failure to act as detailed herein.

110) SOTO anticipates using the bus route again to utilize the goods and services available to the public, including the buses.

111) However, there is a legitimate concern about facing continued discrimination due to violations of the Americans with Disabilities Act (ADA).

112) SOTO plans to access and utilize the buses owned and operated by FLIXBUS within the next six months or possibly earlier.

113) The objective is to use these services both as a patron and as a tester, similar to the access currently provided to the able-bodied community.

114) Regrettably, SOTO has been and expects to be denied such access because of FLIXBUS/UMBRELLA's non-compliance with the ADA.

115) FLIXBUS/UMBRELLA's failure to adhere to the ADA has directly harmed SOTO. He requests that the Court take appropriate action to ensure FLIXBUS/UMBRELLA complies with the ADA, thereby preventing future discrimination and guaranteeing equal access for all individuals, including those with disabilities.

116) FLIXBUS/UMBRELLA has discriminated against SOTO and others in similar situations by denying them full access to and equal enjoyment of the facilities.

117) This discrimination stems from FLIXBUS/UMBRELLA's failure to ensure SOTO's equivalent participation, a violation of 42 USC § 12182(b)(2)(A)(iv), and the overarching principles of the Americans with Disabilities Act as outlined in 42 USC §§ 12101 *et seq*.

118) Additionally, FLIXBUS/UMBRELLA have failed to remove architectural barriers where such removal is readily achievable, in direct contravention of 42 USC § 12182(b)(2)(A)(iv).

119) Based on information and belief, there are ongoing violations of the ADA.

120) A comprehensive inspection is required to identify all infractions.

121) The enumerated violations are not exhaustive of the barriers, conditions, or breaches experienced by SOTO. A thorough inspection is necessary to uncover all acts of discrimination violating the ADA.

122) To this day, barriers that could be readily addressed remain unremedied, continuing non-compliance with the ADA's requirements.

123) SOTO has sought and continues to seek access to the benefits of the services, programs, and activities of the subject facility but has been, and will continue to be, denied such access. He has been otherwise discriminated against and harmed by FLIXBUS/UMBRELLA due to the ADA violations described above. He will continue to suffer discrimination, injury, and harm unless the relief requested under the ADA is granted. The barriers have effectively denied or diminished SOTO's ability to use the services and have endangered his safety. Barriers and violations of the ADA by FLIXBUS/UMBRELLA have posed a risk of injury to SOTO, including but not limited to physical injury, discomfort and embarrassment.

124) SOTO has engaged the services of the undersigned counsel to file and prosecute this action. Under 42 USC § 12205 and 42 USC § 12117, SOTO is entitled to recover reasonable attorney's fees, costs, and expenses from FLIXBUS/UMBRELLA.

125) Under 42 USC § 12188, this Court has the authority to grant injunctive relief to SOTO.

126) This includes ordering the necessary alterations to the subject facilities to ensure they become readily accessible to and usable by individuals with disabilities as mandated by the Americans with Disabilities Act (ADA).

127) Such relief may extend to closing the facilities until the required modifications have been completed to comply with the ADA standards.

128) Based on the provisions of 42 USC § 12188 and the remedies, procedures, and rights therein, SOTO prays for judgment as set forth below.

## CLAIM II: NEGLIGENT CAUSATION OF PERSONAL INJURY
## (AS TO SOTO v. FLIXBUS/UMBRELLA)

129) SOTO realleges and reavers paragraphs 1-86, inclusive.

130) This action arises from negligence resulting in damages exceeding $75,000.00, exclusive of prejudgment interest, costs, and attorney fees. SOTO's claim's value surpasses this Court's minimum jurisdictional threshold. A fair and just jury will ascertain the true value of SOTO's claim under Article 1, Section 21 of the Florida Constitution.

131) FLIXBUS/UMBRELLA had an obligation to SOTO to provide non-discriminatory, safe access to bus services, ensure the proficiency of its personnel in the safe operation of vehicles and equipment, and adhere to federal and state disability rights laws.

132) FLIXBUS/UMBRELLA are vicariously liable for its employee driver's negligence under the Americans with Disabilities Act (ADA) and Florida's Dangerous Instrumentality Doctrine, given the driver's actions occurred within the scope of his employment.

133) FLIXBUS/UMBRELLA breached this duty by failing to ensure non-discriminatory, safe access to bus services, adequate training for its personnel on safe vehicle and equipment operation, respectful and courteous service to passengers with disabilities, and compliance with federal and state disability rights laws.

134) The injuries sustained by SOTO are permanent, resulting in ongoing and future losses.

135) FLIXBUS/UMBRELLA did not take the necessary precautions to ensure the safety of SOTO, failing to exercise reasonable care.

136) FLIXBUS/UMBRELLA were aware or should have been aware that not providing non-discriminatory, safe access to bus services, failing to train its personnel adequately for the safe operation of vehicles and equipment, and not ensuring respectful and courteous service to passengers with disabilities, along with non-compliance with federal and state disability rights laws, posed an unreasonable risk of injury to individuals with disabilities.

137) FLIXBUS/UMBRELLA were or should have been aware that such negligence could lead to injuries for persons like SOTO.

138) Moreover, FLIXBUS/UMBRELLA were or should have been aware that individuals with disabilities would attempt to utilize its bus services.

139) FLIXBUS/UMBRELLA's lack of driver training in operation of wheelchair lift, malfunctioning wheelchair lifts, and lack of training in avoidance of discriminatory behavior was the direct cause of injury to SOTO.

140) Furthermore, the driver was negligent in his behavior with SOTO, pulling him onto the bus, not allowing him to use the lift as an ADA accommodation, and forcing him to walk off the bus.

141) As a result of violating relevant laws and the Americans with Disabilities Act (ADA), FLIXBUS/UMBRELLA caused SOTO to suffer injuries, including but not limited to physical harm, discomfort, and embarrassment.

142) Consequently, due to FLIXBUS/UMBRELLA's negligence, as detailed above, SOTO sustained bodily injuries that led to pain and suffering, disability, disfigurement, hospital and medical expenses, loss of enjoyment of life, mental anguish, physical impairment, economic damages, inconvenience, diminished quality of life, loss of earnings, reduced earning capacity, and worsening of pre-existing conditions.

143) SOTO faces losses that are either permanent or ongoing, and it is anticipated these losses will persist into the future.

144) FLIXBUS/UMBRELLA had a duty to ensure SOTO's safety through reasonable care and breached this duty by violating federal and state laws.

145) FLIXBUS/UMBRELLA's breach of duty included employing a bus driver who operated the vehicle negligently, erratically, and unsafely.

146) This driver denied SOTO his ADA rights, intentionally was cruel to him, and did not assist SOTO, leading to an incident where SOTO fell, incurring injuries.

147) This incident was caused by the negligent, grossly negligent, and reckless actions of FLIXBUS/UMBRELLA and its employees or agents.

148) As a result, SOTO suffered damages, including painful injuries to his shoulder, arms, spine, and lower extremities, necessitating medical care and treatment, along with related expenses.

149) The condition causing SOTO's fall and pull from the lift system was a hazardous situation either created by FLIXBUS/UMBRELLA or one that FLIXBUS/UMBRELLA knew or should have known about.

150) Had FLIXBUS/UMBRELLA exercised reasonable care, this hazard could have been remedied.

151) Due to FLIXBUS/UMBRELLA's negligence, SOTO sustained injuries to his body and extremities, exacerbating pre-existing conditions.

152) These injuries led to pain, a physical handicap, medical expenses for treatment and potential surgical procedures, mental and physical suffering, financial costs for medical care, lost wages, and diminished earning capacity.

153) Moreover, SOTO's injuries hinder his ability to enjoy everyday life. Given their permanent or ongoing nature, SOTO will continue to face these challenges and damages in the future.

## CLAIM III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (AS TO SOTO v. FLIXBUS/UMBRELLA)

154) SOTO realleges and reavers paragraphs 1-86, inclusive.

155) FLIXBUS/UMBRELLA, through the exercise of reasonable care, should have been aware that the acts, conduct, and omissions detailed previously were in breach of SOTO's rights under both Florida law and federal and state disability rights statutes.

156) These actions and failures were likely to cause SOTO emotional and physical distress.

157) FLIXBUS/UMBRELLA's negligence in adhering to its legal obligations has resulted in physical injuries to SOTO, along with ongoing humiliation, anxiety, mental anguish, emotional distress, loss of self-esteem, and negative impacts on personal and social relationships.

158) Additionally, SOTO developed intense and continuing pain as a direct consequence of the injuries sustained on the bus.

159) This triggers both physical symptoms and emotional responses.

160) After the negligent act by FLIXBUS/UMBRELLA, SOTO is in intense pain, leading to depression and anxiety.

161) This emotional impact has disrupted his usual life activities.

162) Due to these injuries, SOTO seeks damages, which will be determined based on evidence presented at trial.

## CLAIM IV: LOSS OF CONSORTIUM (AS TO LARSON-SOTO v. FLIXBUS/UMBRELLA)

163) LARSON-SOTO realleges and reavers paragraphs 1-84 as if fully set forth herein.

164) As a direct, proximate, and foreseeable result of the violations of FLIXBUS/UMBRELLA, LARSON-SOTO has suffered and will continue to suffer the loss of her husband's services, support, consortium, and the care and comfort of her society.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs MICHAEL SOTO and DAISY LARSON-SOTO respectfully request that this Court render judgment in their favor and issue an Order against both Defendants FLIXBUS, INC. and UMBRELLA BUSES INC who are equally liable as follows:

- A judgment against Defendants for each count presented in this Complaint.

- An order declaring that the policies and practices of Defendants violate the Americans with Disabilities Act, 42 USC § 12181 *et seq*.

- An injunction against Defendants, its employees, agents, and all persons acting on the Defendant's behalf or under its control, prohibiting any further violations of the Americans with Disabilities Act of 1990, 42 USC §§ 12101 *et seq*.; 49 CFR Part 37; the Florida Civil Rights Act of 1992; and Florida Statutes §§ 760.01-760.11 and §§ 509.092 *et seq*.

- An order mandating that Defendants implement policies and practices to ensure non-discriminatory, safe access to public bus transportation services for persons with mobility disabilities, in accordance with federal and state law.

- An order requiring Defendants to make the bus line accessible to and useable by individuals with mobility-related disabilities to the full extent required by Title III of the ADA and policies to ensure compliance with the ADA, making the facilities accessible and usable by individuals with disabilities.

- An award of actual, compensatory, and statutory damages for the violation of civil rights, restitution, and a tripling of these damages under 49 CFR Part 37; the Florida Civil Rights Act of 1992; and the Florida Civil Code §§ 760.01-760.11 and §§ 509.092 et seq.

- An award of actual and compensatory damages to SOTO for the negligent causation of personal injury and the negligent infliction of emotional distress.

- An award of compensatory damages to fully compensate SOTO for injuries incurred due to Defendants' discriminatory conduct, including monetary damages and compensatory damages (general and special damages), to be proven at trial.

- An award of special damages to SOTO for lost earnings and/or earning capacity and damages for mental and emotional distress and physical injuries incurred due to Defendants' discriminatory conduct.

- An award of damages to LARSON-SOTO for loss of consortium due to Defendants' negligent and discriminatory conduct.

- An award of reasonable attorney's fees, costs (including litigation expenses, court costs, and expert fees), and other lawsuit expenses to SOTO.

- Retention of jurisdiction by this Court to ensure Defendants' compliance with the ADA and to protect against similar future discrimination by Defendants.

- Such other and further relief as the Court deems just and proper in this matter.

## JURY TRIAL DEMANDED

Plaintiffs SOTO and LARSON-SOTO and hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Tal Shemtov*
TAL SHEMTOV
Attorney for Plaintiffs
Florida Bar # 28456
Shemtov & Hillstrom, PLLC
612 SE 5th Ave., Suite 6
Fort Lauderdale, FL 33301
(954) 329-2222
(954) 329-2211 FAX
tal@shlawfl.com